OLD COLONY TRUST COMPANY & another, executors, *vs.*
ATTORNEY GENERAL & others.

Middlesex.    November 5, 1943. — June 26, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Devise and Legacy,* Gift of collection.

Both on the face of a will and in the light of the circumstances of its execu-
tion, a bequest to the Smithsonian Institution of Washington of "my
collection of old American silver, whether at my . . . residence . . .
or on loan in said Smithsonian Institution at the time of my death,"
with a request as to the exhibition of "this collection," entitled the
Smithsonian Institution, rather than legatees given all the testator's
tangible personalty "not . . . otherwise disposed of," to certain pieces
of silver which formed part of such collection but were at the time of
the testator's death on loan at a Boston museum.

PETITION, filed in the Probate Court for the county of
Middlesex on September 28, 1942.

The case was heard by *Poland,* J.

*J. A. Boyer,* stated the case.

*L. L. Babcock* of New York, (*W. F. Coleman* with him,)
for the respondents Michael.

*C. E. Cunningham,* Assistant United States Attorney, for
the respondent Smithsonian Institution.

LUMMUS, J.    The executors of the will of Arthur Michael,
late of Newton, a professor emeritus at Harvard, bring this
petition for instructions with respect to seventeen pieces of
early American silver, valued at more than $5,000, which
at the time of his death on February 8, 1942, were at the
Boston Museum of Fine Arts as a loan.

The material parts of the will follow.    "Fourth, To the
Smithsonian Institution of Washington in the District of
Columbia, my collection of old American silver, whether at
my said residence in Newton or on loan in said Smithsonian
Institution at the time of my death, not including however
any family silver marked 'C. M.' or 'A. M.'    I direct that

the necessary expense of transporting said silver to Washington shall be paid by my estate, and I request that this collection be exhibited in the National Art Gallery in said Washington. . . . Sixth, To such of the children of my brother Edward Michael of said Buffalo as may be living at my death, in equal shares, the remaining contents of my said residence and adjoining buildings in said Newton, and all my personal effects and tangible personal property, not herein otherwise disposed of."

The Smithsonian Institution, and the children mentioned in the sixth paragraph of the will, are in dispute over the seventeen pieces in question, which at the death of the testator were neither on loan in the Smithsonian Institution nor at his residence, but were at the Boston Museum of Fine Arts as a loan.

The remainder of the collection of early American silver owned by the testator consisted of one hundred thirteen pieces valued at more than $40,000, and at his death was at his residence. No part of the collection was "on loan in said Smithsonian Institution at the time of" his death.

The Probate Court entered a decree "that said petitioners distribute said seventeen pieces of old American silver to said Smithsonian Institution." The children mentioned in the sixth paragraph of the will appealed.

The essence of the gift to the Smithsonian Institution was "my collection of old American silver," except certain family silver. It was "this collection" that was to be exhibited in the National Art Gallery. The words "whether at my said residence in Newton or on loan in said Smithsonian Institution" apparently were intended, not to restrict or cut down the bequest of "my collection," but rather to make sure that the possible temporary dispersal at the death of the testator of parts of his collection of old silver should not affect its unitary character. See *Taylor* v. *Albree*, 309 Mass. 248, 256. No one contends that the silver at the Boston Museum was not a part of "my collection." If some of the pieces, at the time the testator died, had been at a silversmith's shop for repairs, we cannot doubt that they would have passed to the Smithsonian Institution as a part of "my

collection." On the facts already stated, we think that the decree was right.

If we consider other facts shown by the record, the result is the same. When the will was drawn in December, 1935, the testator gave the lawyer who was drawing the will a copy of an earlier will executed by him in the preceding January, by which he bequeathed to the Smithsonian Institution "my collection of old American silver at said 219 Parker Street in Newton [his residence], or on loan to the Boston Museum of Fine Arts, not including, however, any family silver marked 'C. M.' or 'A. M.'" The testator told the lawyer that he had decided soon to transfer to the Smithsonian Institution as a loan the silver already lent to the Boston Museum. More than one draft containing the same provision as that in the will finally executed was submitted to the testator, and he made no comment on the provision as drawn. Evidently the will was drawn in the belief that very soon the silver in question would be in the Smithsonian Institution. Apparently death occurred before the testator carried out his intention to transfer the silver, although he lived until February 8, 1942. We think that these facts, if considered, support our conclusion that the entire collection, wherever located, was intended to pass as a unit to the Smithsonian Institution.

*Decree affirmed.*