Hillsborough,
No. 5497.

AMOSKEAG TRUST COMPANY & a.

v.

PEARLE W. PRESTON & a.

Argued June 8, 1966
Decided July 29, 1966.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* for the plaintiffs, filed no brief.

*Booth, Wadleigh, Langdell, Starr & Peters* ( *Mr. William J. Starr, Jr.* orally ), for the defendants Smith and Davison.

*Devine, Millimet, McDonough, Stahl & Branch* and *John S. Holland* ( *Mr. Holland* orally ), for the defendant Pearle W. Preston.

BLANDIN, J. The sole question is whether the testatrix, Medora Elliott, by her use of the word "issue" in her will executed May 22, 1928 intended to include a child adopted on June 11, 1937 by her daughter Laura, after the testatrix's death on October 27, 1929. Ever since 1842, the statutory definition has been

that " The word ' issue, ' as applied to the descent of estates shall include all the lawful lineal descendants of the ancestor. " R. S. ( 1842 ) 1:16; R.L., 7:20; RSA 21:20. Our courts have interpreted the statute to give issue its ancient and modern meaning as including only the descendants in the blood line of the ancestor and excluding adopted children. *Morse* v. *Osborne,* 75 N. H. 487. See *Parker* v. *Carpenter,* 77 N. H. 453; *Kimball* v. *Penhallow,* 60 N. H. 448; *Jenkins* v. *Jenkins,* 64 N. H. 407; *Petition of Wolcott,* 95 N. H. 23; *Sylvester* v. *Newhall,* 97 N. H. 267, 271. This view represents the overwhelming weight of authority. Annot. 86 A.L.R. 2d 12, 80.

In the present case, the testatrix's son-in-law, Albert H. White, who drafted the will, was an experienced lawyer. Not only would it ordinarily be presumed that he knew the statutory and accepted meaning of the word " issue, " but in addition to this, he had himself been successful counsel in the case of *Parker* v. *Carpenter, supra,* where the question was decided that an adopted child was not a child within the meaning of a will. He argued this point extensively in his brief. The only reasonable conclusion, that this rule remain fixed in his mind thereafter, is further confirmed by a letter he wrote the trustees under the will on June 29, 1937, less than three weeks after the adoption of his daughter Pearle, a defendant and claimant in this case, upon June 11, 1937. In his letter he cited the *Parker* case and concluded that his adopted daughter clearly could not take under the will.

In summary upon this phase of the case, it appears that the draftsman, well acquainted with the accepted statutory meaning of the word " issue, " used it in that sense as expressing the intent of the testatrix. It is not to be assumed that her wishes were not conveyed to her son-in-law upon the vital subject of her will or that he failed to properly express them. See *Amoskeag Trust Co.* v. *Haskell,* 96 N. H. 89, 92. In any event, in the circumstances here the words possessing a well-known meaning must be interpreted in this sense as expressing the testatrix's intent in the absence of a contrary intention manifested in the will. *Leonard* v. *Stanton,* 93 N. H. 113; *Mahoney* v. *Grainger,* 283 Mass. 189; Annot. 90 A.L.R. 2d 924, 939. Had her desire been to benefit adopted children, it could easily have been made to appear. For example, in *Sylvester* v. *Newhall,* 97 N. H. 267, the testatrix was careful to have inserted a provision that her step-daughter was to be treated " as if [she] were a natural child of mine. " *Id.,* 271. The Court held that the step-child should be included under the

word " issue " because of the specific direction in the will. However, the opinion ( page 271 ) reaffirmed the established law that issue ordinarily means "the [testatrix's] lineal descendants." It then cited approvingly *Morse* v. *Osborne,* 75 N. H. 487, 488, and *Kimball* v. *Penhallow,* 60 N. H. 448, 451. *Sylvester* v. *Newhall,* 97 N. H. 267, 271.

In the *Morse* case, where in order to reach its decision the question whether an adopted child was issue had to be resolved, the court stated unequivocally: "In common understanding, the word [issue] includes natural descendants and not children by adoption." *Id.,* 488. It cited approvingly the *Kimball* decision.

The defendant Pearle freely concedes that the weight of authority is against her position. Annot. 86 A.L.R. 2d 12, 80. See *Merrow* v. *Merrow,* 105 N. H. 103, 106. In fact, when, as in the present instance, she was adopted after the testatrix's death, only a small minority would support her position. Annot. 86 A.L.R. *supra, pp.* 82, 83.

However, she attempts to avoid the implications of this situa - tion by asserting that the will shows no intent to "benefit only those persons related to her [the testatrix] by blood." It is true that the testatrix made specific bequests to her sons-in-law and provided that if her son Alonzo should marry, his wife should share in the income of the trust if she survived him. She also used the word " issue " apparently as referring to both grand - children and great-grandchildren and directed that after the ter - mination of the trust, the members of the second generation should take per capita and those of the third, per stirpes.

We do not find these provisions furnish significant support to this defendant. Never in the will is the word " children " used except in regard to the testatrix's own children. The constant reference, aside from the bequests to her immediate in-laws, is to issue, and as we have said before, issue means lineal descendants, which would include natural children, grandchildren, and great-grandchildren ( RSA 21:20 ) but not adopted children. *Morse* v. *Osborne,* 75 N. H. 487, 488. See *Parker* v. *Carpenter,* 77 N. H. 453.

In this situation, the claimant's argument is not persuasive that the will showed an intent to use issue as having an uncom - mon rather than the statutory meaning. RSA 21:20. It appears that the testatrix intended to benefit her sons-in-law and in the event her son should marry, her daughter-in-law, but thereafter

her bounty was to be limited to the issue of her own children, or in other words their natural children. Since she had three children and as it was possible though improbable that her daughter Laura, wife of Albert H. White, might have a child, we perceive in these circumstances no sufficient reason for any conclusion that the testatrix intended to benefit adopted children. We are therefore unable to accept the position taken by the defendant that the word " issue " was used so loosely as to furnish a basis for assuming a positive intent to include adopted children.

The defendant finally urges that, at the worst, no contrary intent appears in the will, and therefore the word " issue " should include her as an adopted child. In so doing, she relies upon the policy expressed in our adoption statute, RSA ch. 461, which is substantially unchanged from that in force when the will was drawn. P. L., c. 292. The pertinent portions of this law provide that an adopted child should be the child of the adopting parents "to all legal intents and purposes" ( RSA 461:5 ( supp )) and for purposes of inheritance. RSA 461:6. She also cites authorities from other jurisdictions in support of her proposition, including *Sewall* v. *Roberts,* 115 Mass. 262; *In re Coe,* 42 N. J. 485; 43 Mich. L. Rev. 705, 710, 901.

At the outset, it should be observed that while the policy of RSA ch. 461 is to treat an adopted child as nearly as may be to a natural child, there is not the slightest intent evinced that this policy should supersede the wishes of the testatrix. This, as we have repeatedly held, is the touchstone of our law as to the inter- pretation of wills. *Merrow* v. *Merrow,* 105 N. H. 103, 106.

We agree with the opinion in *Morse* v. *Osborne,* 75 N. H. 487, 491, that authorities from other jurisdictions relied upon by the defendant, expressing minority views and depending upon policies, statutes and circumstances different from those before us, are not controlling. This is especially so when we consider the clear and positive attitude which our courts have long taken in regard to the meaning of the word "issue." That this has met with approval from our Legislature is apparent from the fact that in the many revisions of the statutes which have occurred through the years, no attempt has been made to change the provision defining issue in the face of the court's interpretation of it.

In summary, we hold in all the circumstances that the testatrix used the word "issue" in its statutory sense. RSA 21:20. In so doing, she clearly expressed her intention that adopted children

should not benefit. We cannot construe the will otherwise in the circumstances here "without doing violence to the ordinary meaning of English words." *Morse* v. *Osborne,* 75 N. H. 487, 490. In reaching our conclusion, we are not unmindful of the claimant's argument urging that "humane considerations" should constrain us to arrive at an opposite result. The temptation to follow this course on occasion may be strong. However, to do so here we must upset established law and sensible principles relied upon by lawyers and laymen alike. Furthermore, we would have to substitute unlikely possibilities for reasonable probabilities. *Romprey* v. *Brothers,* 95 N. H. 258, 260. *In re Lawrence Estate,* 104 N. H. 457, 460. To follow this course would not serve the best interest of justice.

The plaintiff trustees are instructed that the word "issue" includes only the lineal descendants of the testatrix, and that the adopted child does not share in the trust estate.

*Remanded.*

LAMPRON J., dissented; the others concurred.

LAMPRON, J., *dissenting:* It is well settled law that the intent of Medora W. Elliott derived from the contents of her will is the sovereign guide to its interpretation. *Merrow* v. *Merrow,* 105 N. H. 103, 106. The meaning of her will is to be collected not from an insulated phrase or clause but from the whole instrument. *Athorne* v. *Athorne,* 100 N. H. 413, 415. In so doing arbitrary rules of construction must yield to the intent of the testatrix. *In re Lathrop Estate,* 100 N. H. 393, 395; *In re Lawrence Estate,* 104 N. H. 457, 459.

Read as a whole the will of this testatrix demonstrates a clear and paramount intent to give her estate to the members of her family by blood or otherwise, that is, her children, their spouses, their issue, and "the issue of such issue." I fail to see any manifestation of an intent on her part to exclude from her bounty one who by virtue of P. L., 292:4 ( now RSA 461:5 ) became the child of one of her children and of her spouse "to all legal intents and purposes." Medora W. Elliott's will read as a whole demonstrates such a broad intent to benefit all the members of her family so as to include therein one who became a member by adoption of the family of one of her daughters and the daughter's spouse. RSA

461:5. See *In re Bunker's Estate*, 106 N. H. 391, 392. I would hold that Pearle Preston is included in the class of issue under the will of Medora W. Elliott.